GARY S. CASSELMAN, ESQ. (SBN 81658)
DANIELLE L. CASSELMAN, ESQ., SBN 170622
**CASSELMAN LAW OFFICES**
3415 South Sepulveda Boulevard, Suite 100
Los Angeles, California 90034
☎ (310) 314-4444  (Fax) (310) 314-4447
e-mail: garyscasselman@gmail.com

Attorneys for Plaintiff, QIANA MARSHALL

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| QIANA MARSHALL, | CASE №. CV-10-06439 MMM (FMOx) |
|---|---|
| Plaintiff, | PLAINTIFF'S MEMORANDUM OF CONTENTION OF LAW AND FACTS |
| vs. | Action Filed: 8/27/2010 |
| COUNTY OF LOS ANGELES, AND DOES 1 through 10, inclusive, | The Honorable Margaret Morrow, United States District Court Judge, Central Dist. |
| Defendant. | PTC: December 19, 2011<br>CTRM: 780 (Roybal)<br>TRIAL: January 10, 2011<br>TIME: 10 a.m. |

Pursuant to Local Rule 16-3 of the United States District Court for the Central District of California, plaintiff QIANA MARSHALL submits her Memorandum of Contentions of Fact & Law.

Plaintiff contends and expects to prove the following:

Plaintiff Qiana Marshall is an African American disabled former postal worker. Neither herself, nor her son, a college student, nor her residence were ever the proper subject of any type of law enforcement contact. However, Defendants, who did not have a warrant, ended up going to plaintiff's residence instead. Apparently, they did not properly obtain, check or verify the address of the parolee they were going to contact, though he was not in violation of his parole conditions.

Plaintiff was terrorized during the entry, seizure and search, until their blunder was discovered and they left. A simple address verification would have avoided this whole situation.

1  These facts are largely not disputed, as defendants admit entering plaintiff's apartment, and that her
2  apartment was the wrong one. In the early morning hours of November 5, 2009, she was asleep alone
3  in her apartment.   She is the mother of one son, a college student residing in Bakersfield.  No one
4  else resided with her at that time.

5  The events giving rise to this action occurred on or about November 5, 2009 at plaintiff's
6  residence, 13526 Kornblum Ave. Apt. 6, Hawthorne, California  90250.  At about 5:00 a.m. to 6:00
7  a.m. on November 5, 2009, plaintiff was awakened by loud banging on her doors and windows.
8  About 10 uniformed and/or plain clothes Los Angeles County Deputy Sheriffs were at her front door
9  demanding to enter her residence by shouting for plaintiff to open the door.

10  As plaintiff complied with the orders to open the door, the heavily armed, uniformed deputies
11  forcibly pushed their way into Ms. Marshall's home pointing automatic and/or semi-automatic
12  firearms at her, ordering her to the ground and without further explanation began to conduct a search
13  of the premises.  At gun point, Plaintiff was ordered to kneel on the floor.  Wearing a short t-shirt
14  only and no undergarments, plaintiff complied and kneeled on the floor with her lower body,
15  including genitalia, exposed to viewing by all defendants present. Plaintiff asked one or more
16  deputies present if she could grab her robe to cover herself or they could bring something to cover
17  up, but he/they declined to do so. Plaintiff politely inquired what the problem was and one of the
18  defendant deputies present rudely asked her where her son was. Plaintiff replied that he was in
19  Bakersfield. One of the deputies/officers present shouted at her asking  "Who gave him permission
20  to go to Bakersfield?" She replied that her son was a college student.  The deputy/officer then asked
21  her son's name and plaintiff replied that his name was Ramon Jefferson Jr.

22  One of the deputies then asked plaintiff if her son's name was Donya Steen, which she
23  replied truthfully that it  wasn't, and that she did not know anyone by that name.   She offered to
24  show the deputy a copy of her son's driver's license, but the deputy  refused.   Donya Steen, the
25  parolee in question here, had complied with his parole conditions, had not moved and was not the
26  subject of any kind of other investigation based on information or probable cause. Other than his
27  condition of parolee, he had not been personally or particularly identified in connection with any
28  particular crime. He had reported monthly to his parole officers, Monica Esqueda. There was no

2

parole violation and many of the participants in the operation had no idea why they were there. They merely followed the lead of the Sheriff Deputies.

This was a County Sheriff's operation and the parole officers' presence was only a fig leaf to cover what was otherwise a naked search without probable cause, reasonable suspicion or any indication that any particular person was out of compliance.

Appearing confused, the deputy then asked plaintiff her address. Plaintiff replied, giving him her complete address, 13526 Kornblum Avenue, Apartment 6, Hawthorne, CA. The deputy checked his paperwork, immediately realizing that they were at the wrong address.

Plaintiff stated that apartment 6A, that which defendants apparently sought, was not her apartment, but the one next door. While this exchange was taking place, plaintiff remained half-naked, kneeling on the floor, with her genitals exposed for all to see while the officers ransacked her home, pulling clothes from closets, emptying cabinets or cupboards, not restoring or replacing much of anything. The deputy or deputies asked plaintiff if she knew the occupants of apartment 6A and she truthfully stated she did not, that they had been living there only for about six months and that she knew nothing about them.

At this point, the deputy called the others who had been searching plaintiff's home back into the living room. Plaintiff inquired why they were searching her home. Although by then, it was obvious that the officers had entered the wrong residence, seized and humiliated the wrong person, no apology or truthful statement was then made. Instead the deputy offered the false purported excuse that "there had been burglaries in the area." The deputy who had been speaking with plaintiff then told the others present that he thought they had the wrong address. They exited plaintiff's home without apology or explanation. Plaintiff's residence was left in complete disarray by the unprofessional, unreasonable manner of the unlawful search conducted by the invaders. After departing plaintiff's residence, defendants proceeded to the adjacent apartment, 6A.

Later, defendant Elliott returned to Qiana Marshall's apartment and told her they had the wrong apartment. With respect to plaintiff, defendants admit they entered the WRONG apartment. They had the wrong address and did not bother to verify the correct address and/or address any discrepancies which might have been about the address. Neither plaintiff nor her home were the

proper subject of any law enforcement contact whatsoever.

Already physically disabled by serious pre-existing physical injuries, Ms. Marshall was very traumatized by these events, exacerbating her pre-existing physical and emotional conditions. She sought mental health care treatment for her conditions post-incident, with Linda Rosetti.

**Statement of Claims and Defenses**:

Plaintiff Qiana Marshall alleges the following claims in her operative complaint:

Federal Claims:

    1. 42 U.S.C. § 1983 (Search, Seizure)

    2. 42 U.S.C. § 1983 (Entity Liability)

The evidence in support of plaintiff's claims will be her testimony, her witnesses' testimony, records and exhibits thereof, as well as the testimony of defendants and that of Parole Officer Monica Esqueda.

## MEMORANDUM OF AUTHORITIES

II   Issues of Law.

1. The elements of a § 1983 action (*Johnson v. Hawe*, 388 F.3d. 676 (9th Cir. 2004) are:

    1. The conduct complained of was committed by a person acting under color of state law.

    2. That the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

2. The Fourth Amendment proscribes unreasonable seizures. The reasonableness of a seizure depends "not only on when it is made, but also on how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S. Ct. 1694 (1985).

3. Reasonableness of a seizure is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999).

4. "[B]efore conducting a warrantless search pursuant to a parolee's parole condition, law

enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir.2005); *Cuevas v. DeRoco*, 531 F.3d 726 (9th Cir. 2008); *U.S. v. Howard*, 447 F.3d 1257 C.A.9 (Nev.),2006;This is a higher standard than a mere well-founded suspicion. See *United States v. Martell*, 654 F.2d 1356, 1358 (9th Cir.1981).

5.   Probable cause requires that "the facts available to the officer would warrant a man of reasonable caution in the belief" that Apartment 6 was that of parolee Donya Steen at the time the search of Plaintiff's apartment 6A was conducted. *United States v. Franklin* 603 F.3d 652, 656 (9th Cir. 2010) quoting *Texas v. Brown* 460 U.S. 730 (1983).

6.   Absent such probable cause, nothing in the law justifies the entry into and search of a third person's house to search for the parolee. *Motley v. Parks* 432 F.3d 1072, 1080 (9th Cir.2005).

7.   In *Payton v. New York* 445 U.S. 573, 601 (1980), the U.S. Supreme Court expressly declared that "the sanctity of the home .. . . has been embedded in our traditions since the founding of the Republic." The Fourth Amendment guarantees one of the most fundamental aspects of American liberty and private property rights: the right to be safe in one's home.

8.   A search conducted without consent or a search warrant is permissible only when the officers have some heightened knowledge that they are at the address where either the parolee or the subject of an arrest warrant resides. *Motley v. Parks* 432 F.3d 1072, 1080 (9th Cir.2005); *U.S. v. Howard* 447 F.3d 1257 (9th Cir.2006)

9.   Mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

10.   Probable cause to search Plaintiff's apartment is a question for the jury. *McKenzie v. Lamb*, 738 F.2d 1005.

11. Where, as here, an officer's conduct is based on a mistake of fact, the court must ask whether a reasonable officer would have or should have accurately perceived that fact. *Torres v. City of Madera* 648 F.3d 1119, 1124 (9th Cir. 2011).

12. Whether an official protected by qualified immunity may be held liable for an allegedly unlawful official action generally turns on the objective reasonableness of the action ... assessed in light of the

5

1  legal rules that were clearly established at the time it was taken. *Anderson v. Creighton,* 483 U.S. 635 (1987)

13. Opening the door is acquiescence to a law enforcement demand and not freely given consent. *United States v. Bautista*, 362 F.3d 584, 593 (9th Cir. 2004)

14. Recovery of attorneys' fees is permitted for the prevailing party in a 42 U.S.C. § 1983 action, pursuant to 42 U.S.C. Section 1988.

15. Exemplary and punitive damages may be awarded against an individual defendant for violation of civil rights under either 42 U.S.C. § 1983.

Evidentiary Issues.

Defendant will seek to exclude evidence of disclosures of misconduct disclosed in discovery:

C.   Bifurcation of Issues:

Defendant Elliott seeks bifurcation of punitive damages from liability and damages.

Jury Trial.

Plaintiff made a timely demand for jury trial.

Attorney's Fees.

This is a civil rights action pursuant to Title 42 U.S.C. §§ 1983. Attorney fees are recoverable pursuant to 42 U.S.C. § 1988

Abandonment of Issues.

None

DATED: December 12, 2011        Respectfully Submitted,

                                LAW OFFICES OF GARY S. CASSELMAN

                        BY      /s/ GARY S. CASSELMAN
                                GARY S. CASSELMAN
                                Attorneys for Plaintiff MARSHALL